IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

THOMAS WALSH,
      *Pro se* Plaintiff,

v.

                                Civil Case No. 3:13CV401-JAG

DIOMEDES LOGOTHETIS, *et al.*,
      Defendants.

## MEMORANDUM OPINION

The Court takes this matter up on its own initiative. The plaintiff, Thomas Walsh ("Walsh"), has filed a ninety-one page complaint against seventeen defendants. (Dk. No. 1.) The complaint contains twenty-five counts, many of them redundant, consisting of alleged constitutional violations, federal and state statutory violations, and federal and state criminal violations. The complaint includes largely irrelevant, immaterial, and scandalous allegations and fails to state any claim upon which the Court can grant relief. Accordingly, the Court exercises its inherent authority and DISMISSES the case WITH PREJUDICE.

## I. BACKGROUND

Walsh began his employment at Virginia Commonwealth University ("VCU") in April 2008 as the Chief Administrative Officer of the Department of Physiology and Biophysics in the School of Medicine ("the Department"). VCU paid him a "base annual salary of ~$84,000." (Compl. ¶ 8.) Dr. Diomedes Logothetis ("Logothetis"), as Chair of the Department, directly supervised Walsh, and Amy Sebring ("Sebring"), Associate Dean for Finance and Administration in the School of Medicine, served as his "dotted-line supervisor." (Comp. ¶ 10.)

Three employees, including one of the defendants, Rebecca Cain Ivins ("Cain"), directly reported to Walsh.

During his time at VCU, Logothetis allegedly made multiple promises to raise Walsh's salary.   These alleged promises included (1) "promises of 4-5% raises each year," (2) "a guaranteed $2,000 bonus each year," (3) "extra work to earn more wages," (4) reclassification "as a Non-Exempt employee . . . [in order to] pay [Walsh] for all of the extra hours worked," and (5) "$18,000 per semester [teaching] . . . as a highly qualified adjunct [teacher]."   (Compl. ¶¶ 98, 103, 106.)

On March 28, 2011, Cain, in a meeting with Logothetis, allegedly "launched false allegations of sexual harassment against the Plaintiff."   (Compl. ¶ 32.)   Logothetis met with Walsh about Cain's sexual harassment complaint on March 30, 2011.   In this meeting, Logothetis allegedly told Walsh to look for another job and insinuated that Walsh no longer had a job with VCU.  On April 4, 2011, Walsh came back to work and again met with Logothetis.   In this meeting, Logothetis brought up an "'offensive' . . . email that [Walsh] wrote to his staff on March 29, 2011" and allegedly restated that Walsh needed to "move on immediately." (Compl. ¶ 65.)

After his April 4, 2011 meeting with Logothetis, Walsh contacted Velma Jackson-Williams ("Williams"), an Equal Employment Officer at VCU, to report Logothetis's actions.   In his conversation with Williams, Walsh said he wanted to file a complaint against Cain for sexual harassment.   Williams allegedly replied that Walsh "could not file a charge against Cain, since Cain had reported allegations against [Walsh] to Logothetis a week earlier and VCU would be put in a bad light looking like it was retaliating against Cain for reporting [Walsh]." (Compl. ¶ 68.)  After termination, Walsh filed a sexual harassment retaliation complaint against Logothetis

on September 19, 2011. (Compl. ¶ 300.) Williams allegedly never addressed this complaint. (*Id.*)

On April 20, 2011, after investigating Cain's complaint, Williams sent an email to Logothetis and Sebring, among others, reporting that no facts supported Cain's claim of sexual harassment. (Dk. No. 6-1 at 21, *In re* Case No. 9847 (Aug. 2, 2012)).[1] On April 21, 2011, Sebring responded to Williams's email raising questions regarding the financial management of the Department. (*Id.* at 20.) In this email, Sebring wrote "To be honest, I was hoping that [VCU's EEO office] would find cause for dismissal so we didn't need to engage additional [University] resources/your office in another investigation." (*Id.*)

On June 2, 2011, the Audit Division completed an audit of the Department. (Dk. No. 6-2 at 21–27.) Among other findings, the Audit Report said that Walsh had falsified his state employment application by overstating his salary in a prior job. (Dk. No. 6-2 at 26.) The auditors reached this conclusion after finding Walsh's 2007 and 2008 tax returns on his VCU-owned computer. (*Id.*) The auditors also found that Walsh had failed to follow the appropriate procedures for allowing his staff to claim overtime, (Dk. No. 6-5 at 1), and did not properly review an employee's use of a university credit card. (Dk No. 6-4 at 1.) On June 15, 2011,

---

[1] Williams's email is part of the record of Walsh's employment grievance. Ordinarily, a court "may not consider any documents that are outside of the complaint, or not expressly incorporated by referenced therein." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (quoting *Braun v. Maynard*, 652 F.3d 557, 559 n.1 (4th Cir. 2011). Walsh incorporated the state grievance proceeding by repeated reference, often even quoting from the hearing officer's report. (*See, e.g.*, Compl. ¶ 78.) Thus, in keeping with *Clatterbuck*, the Court can review these documents without waiting for a party to file a motion for summary judgment. Accordingly, on June 25, 2013, the Court ordered Walsh to submit the record from these proceedings. (Dk. No. 3.) Walsh submitted the record on July 5, 2013. (Dk. Nos. 5–6.)

Walsh received notice of VCU's intent to terminate him as of June 24, 2011. (Dk. No. 6-1 at 49.)[2] VCU terminated Walsh on June 24, 2011. (Dk. No. 4.)

On June 27, 2011, Walsh filed an employee grievance with the Commonwealth of Virginia against VCU for his termination, (Dk. No. 6-2 at 14–17), listing many of the same claims that he lists in this complaint. The hearing officer issued his decision on August 2, 2012, upholding VCU's decision to terminate Walsh. (Dk. No. 6-1 at 12–23, *In re* Case No. 9847 (Aug. 2, 2012)). Based on Walsh's request for reconsideration, the hearing officer issued a reconsideration decision on September 17, 2012, addressing additional arguments raised by Walsh. (Dk. No. 6-1 at 25–30, *In re* Case No. 9847-R (Sept. 17, 2012)). None of the additional arguments proved persuasive, and the hearing officer denied Walsh's request for reconsideration. (*Id.* at 30.)

Walsh then filed an appeal to the Office of Employment Dispute Resolution ("EDR") and the Department of Human Resource Management ("DHRM") for review of the hearing officer's decision. The state has given EDR the responsibility of rendering decisions on matters related to procedural compliance with grievance procedures. (Dk. No. 6-1 at 35–36, *In re* Virginia Commonwealth University, Ruling No. 2013-3415 (Oct. 5, 2012)). On October 5, 2012, EDR issued its administrative review finding no reason to disturb the hearing officer's decision. (*Id.* at 32–42.) Shortly thereafter, DHRM sent a letter to Walsh "declin[ing] to interfere with the application of [the hearing officer's] decision." (Dk. No. 6-1 at 43–44.)

On November 14, 2012, Walsh filed an appeal of the hearing officer's decision in the Circuit Court of the City of Richmond. On January 3, 2013, the Circuit Court affirmed VCU's

---

[2] VCU issued Walsh three written notices, charging him with two Group II violations and one Group III violation, with the recommended punishment being termination. The officer in his grievance hearing eventually rescinded the Group II violations after finding that VCU had "acted out of an improper motive." (Dk. No. 6-1 at 21.)

4

decision to terminate Walsh. (Dk. No. 6-1 at 3–7, *Walsh v. Virginia Commonwealth University*, No. CL12-4909-5 (Jan. 3, 2013)). On June 25, 2013, the Court of Appeals of Virginia issued a per curiam opinion affirming the circuit court and the hearing officer in his final report. (Dk. No. 6-1 at 1, *Walsh v. Virginia Commonwealth University*, Record No. 0261-13-2 (June 25, 2013)). Walsh filed his complaint with this Court on June 24, 2013.

## II. <u>STANDARD OF REVIEW</u>

Courts possess inherent authority to dismiss cases *sua sponte*. The Supreme Court noted in *Mallard v. U.S. District Court for the Southern District of Iowa*, 490 U.S. 296, 307–08 (1989), that "[28 U.S.C.] [§ 1915(e)][3] . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision." *See also, Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) ("Because it is patently obvious that Baker could not have prevailed on the facts alleged in his complaint, we find that *sua sponte* dismissal [by the District Court] was appropriate.").

In reviewing Walsh's complaint, the Court applies the standard for a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* Although the Court must accept as true all well-pleaded factual allegations, the Court need

---

[3] *Mallard* refers to § 1915(d). A 1996 congressional amendment redesignated § 1915(d) as § 1915(e). Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321.

not accept legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

While courts should liberally construe *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The court need not "attempt to discern the unexpressed intent of the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The Fourth Circuit has stated: "though [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett* 775 F.2d at 1276. In other words, "[d]istrict judges are not mind readers." *Id.* at 1278. Further, "[i]t is neither unfair nor unreasonable to require a [*pro se*] pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal." *Harris v. Angliker*, Nos. 91-7118, 91-7120, and 91-7620, 1992 WL 21375, at *1 (4th Cir. Feb. 10, 1992) (unpublished opinion) (internal citation omitted).

## III. ANALYSIS

The Court will group counts together based on the type of alleged violation and address each in turn. The Court discerns the following groups: (A) constitutional violations;[4] (B) federal statutory violations; (C) state statutory violations; and (D) state common law violations.

---

[4] Walsh refers to 42 U.S.C. § 1983 in each of his twenty-five counts. He repeatedly states that "[a]ll Defendants are 'persons' within the meaning of § 1983, in that at all times material hereto they were acting under the color of state law as employees of VCU under the Commonwealth of Virginia in their individual capacities." (Compl. ¶¶ 143, 149, 155, 158, 169, 175, 181, 187, 195, 203, 210, 215, 221, 231, 242, 247, 252, 260, 265, 270, 275, 280, 286, 289, 294.) Section 1983 provides a private remedy for violations of federal law by persons acting under color of state

*A. Alleged Constitutional Violations*

*1. Counts 1–3: Fourth Amendment Violations*

Counts 1–3 allege violations by certain defendants of Walsh's Fourth Amendment rights. Although Walsh phrases each count differently (e.g., Count 1 – "Violation of the Civil Rights Act (42 U.S.C. § 1983)", (Compl. at 63), Count 2 – "Invasion of Privacy (U.S. Const. Amend. IV)", (Compl. at 65)), Walsh raises the same complaint in each court—that the defendants unlawfully entered his office and opened files on his computer.   Accordingly, the Court will evaluate Counts 1–3 together.

The Fourth Amendment states, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."   U.S. Const. amend. IV.   Seizure alone, however, "is not enough for § 1983 liability; the seizure must be 'unreasonable.'"   *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989).   To establish a Fourth Amendment violation, a plaintiff must prove that he has a legitimate expectation of privacy:

> To establish a violation of his rights under the Fourth Amendment, [the plaintiff] must first prove that he had a legitimate expectation of privacy in the place searched or the item seized. *See Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Rusher*, 966 F.2d 868, 873–74 (4th Cir. 1992). And, in order to prove a legitimate expectation of privacy, [the plaintiff] must show that his subjective expectation of privacy is one that society is prepared to accept as objectively reasonable. *See California v. Greenwood*, 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988)

*United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000).

law.  Accordingly, the Court assumes that Walsh intended to allege violations under § 1983 only for his federal law claims.

Public employees have a reasonable expectation of privacy in their workplace. *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987). "Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." *Id.* No "legitimate expectation of privacy" exists, however, where the agency's policy puts employees on notice that the agency may monitor computer use. *See Simons*, 206 F.3d at 398 (agency policy stating the agency would "audit, inspect, and/or monitor" employees' use of the Internet "placed employees on notice that they could not reasonably expect that their Internet activity would be private"); *see also United States v. Hamilton*, 778 F. Supp. 2d 651, 654 (E.D. Va. 2011) (no objectively reasonable expectation of privacy where agency's policy regarding limitations on computer privacy applied to transmission "stored" on the computer).

Walsh alleges that the defendants unlawfully entered his office and took certain files from his work computer "where he was authorized to store personal files" pursuant to "three VCU computer policies." (Compl. ¶¶ 145, 151.) Further, Walsh contends that he "had a reasonable expectation of privacy with respect to the use of his work computer to put his personal files on the 'C' drive." (Compl. ¶ 151.) Although VCU may have allowed employees to use VCU computers for personal use, Walsh ignores the Commonwealth of Virginia's policy regarding electronic communication. The "Use of Electronic Communications and Social Media" Policy, issued by the Department of Human Resource Management ("DHRM") states:

> No user shall have any expectation of privacy in any message, file, image or data created, sent, retrieved, received, or posted in the use of the Commonwealth's equipment and/or access. Agencies have a right to monitor any and all aspects of electronic communications and social media usage. Such monitoring may occur at any time, without notice, and without the user's permission.[5]

---

[5] Walsh acknowledged this policy on April 10, 2008. (Dk. No. 6-1 at 57.) Thus, even if Walsh did not read the policy, he had constructive notice of the policy.

(Dk. No. 6-1 at 17, *In re* Case No. 9847 (Aug. 2, 2012)).   Further, the policy asserts that "[a]gencies may supplement the policy as necessary, as long as such supplement is consistent with the policy." (*Id.* at 18.)   Accordingly, Walsh's claims of unreasonable search and seizure fail because he did not have a reasonable expectation of privacy.

### 2. Counts 5–10: Due Process Violations Pursuant to the Fifth and Fourteenth Amendments

In Count 5-10, Walsh alleges "Fifth and Fourteenth Amendment Violations of Plaintiff's Due Process of Law (U.S. Const. Amend. V and XIV)." (Comp. at pp. 69-70.)   In Counts 5–7, he specifically contends that the defendants "deprived Plaintiff of his property right interest of continued employment at VCU which is a Federal and State right." (Compl. ¶¶ 172, 178, 184.) In Counts 8–10, Walsh claims that the defendants "deprived Plaintiff of his liberty to pursue his teaching passion and vocational aspirations." (Compl. ¶¶ 190, 198, 206.)

The Fifth Amendment states, in relevant part, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."   U.S. Const. amend. V.   Similarly, the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend. XIV, § 1.   "In order to state a § 1983 claim for deprivation of property without due process, plaintiff must show [at the first step] that she has a constitutionally protected property interest, and [at the second step] that she has been deprived of that interest by state action." *Echtenkamp v. Loudon Cnty. Pub. Sch.*, 263 F.Supp.2d 1043, 1053 (E.D. Va. 2003) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988); *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972)).   Once the plaintiff shows the deprivation of a protected property interest, the inquiry shifts to determining "what process is due and whether it has been provided." *Id.* (citing *Stone*, 855 F.2d 172; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)).

9

For Counts 5–7, although Walsh does not cite to any specific state or federal law, the Court assumes that he has a protected property interest in continued employment at VCU. *See Hibbitts v. Bucahnan Cnty. Sch. Bd.*, No. 1:09CV00073, 2010 WL 2570966, at *2 (W.D. Va. June 23, 2010) ("Public employees have a constitutionally protected property interest when State law guarantees that employment may not be terminated without cause or certain procedural safeguards."); *Bowers v. Rectors & Visitors of the Univ. of Va.*, No. Civ. 3:06CV00041, 2006 WL 3041269, at *3 (W.D. Va. Oct. 24, 2006) (finding a former University of Virginia employee had a constitutionally protected property interest in her continued employment). The Court dismisses Counts 5–7 at the second step of the inquiry, though, because VCU did not deprive Walsh of a protected property interest at the times alleged in the complaint.

The Fourth Circuit explained in *Fields v. Durham* that "the property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services." 909 F.2d 94, 98 (4th Cir. 1990) (citing *Huang v. Bd. of Governors*, 902 F.2d 1134 (4th Cir. 1990); *Royster v. Bd. of Trs.*, 774 F.2d 618, 621 (4th Cir. 1985)). It does not include the "right to physically possess a job, in defiance of the stated desire of the employer." *Royster*, 774 F.2d at 621. The employee's "property interest is more generally in continued employment, and no deprivation exists so long as the employee receives 'payment of the full compensation due under the contract.'" *Fields*, 909 F.2d at 98 (quoting *Royster*, 774 F.2d at 621; *see also Echtenkamp*, 263 F.Supp.2d at 1054 (finding that the public school system did not deprive the plaintiff of a property interest in continued employment when she lost authority and responsibility, but had no reduction in salary)).

Pursuant to Court Order, (Dk. No. 3), Walsh acknowledges that VCU terminated him on June 24, 2011 because "VCU paid plaintiff base salary through June 24, 2011." (Dk. No. 4.)

Thus, according to *Fields*, VCU did not deprive Walsh of his protected property interest in continued employment until June 24, 2011.

In Count 5, Walsh alleges that Logothetis "[took] away [Walsh's property right in continued employment] . . . when he concluded that [Walsh] should be terminated for an offensive email prior to receiving the facts." (Compl. ¶ 173.) Walsh sent the alleged offensive email on March 29, 2011. In a meeting with Logothetis on April 4, 2011, Walsh claims that Logothetis discussed the offensive email and told him that he needed to "move on immediately." (Compl. ¶¶ 65–66.) Accordingly, the Court understands Walsh to allege that the due process violation asserted in Count 5 occurred on April 4, 2011. VCU, however, terminated Walsh on June 24, 2011. Because VCU did not deprive Walsh of his property interest in continued employment until June 24, several months after his meeting with Logothetis, the due process violation alleged in Count 5 fails.

Similar to Count 5, Count 6 alleges that Logothetis "[took] away [Walsh's property right in continued employment] . . . when he concluded that [Walsh] should be terminated for sexual harassment prior to receiving the facts." (Compl. ¶ 179.) As previously stated, Walsh and Logothetis met on April 4, 2011, the date Logothetis allegedly requested an investigation into the sexual harassment complaint. On April 20, 2011, though, Logothetis received a report from Equal Employment Officer Williams stating that the sexual harassment complaint from Cain had no merit, ending the investigation. VCU, however, did not deprive Walsh of his property interest in continued employment until June 24, 2011. Accordingly, the Court dismisses Count 6.

Count 7 alleges that Walsh's property right "was taken away by Defendant Sebring when she concluded that Plaintiff should be terminated prior to receiving the facts." (Compl. ¶ 185.) Walsh bases this allegation on an email dated April 21, 2011. Once again, this April event did

11

not deprive Walsh of his protected property interest because VCU did not terminate him until June 24, 2011. Along with all of Walsh's other property interest claims, the Court dismisses Count 7. Furthermore, even if Walsh could prove that VCU deprived him of a protected property interest, Counts 5-7 would fail on the merits because VCU's pre-deprivation procedures satisfied the strictures of the Due Process Clause.

When the state deprives an employee of a protected property interest in continued employment, the Due Process Clause requires that the state provide the employee with "oral or written notice of the charges against him, and an opportunity to present his side of the story" before termination. *Loudermill*, 470 U.S. at 546 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). *Loudermill* hearings do not require elaborate procedures. *Id.* (citing *Garraghty v. Jordan*, 830 F.2d 1295, 1300 (4th Cir. 1987) (finding that a satisfactory hearing does not need to be held in front of an "impartial decision maker")). A *Loudermill* hearing primarily helps employers avoid making a mistake, "for a pre-termination hearing may be the only meaningful opportunity to invoke the discretion of the decision maker." *Crocker v. Fluvanna Cty. Bd. of Welfare*, 859 F.2d 14, 17 (4th Cir. 1988) (citing *Loudermill*, 470 U.S. at 542-43). Furthermore, courts look at the availability of any post-termination procedure when determining the sufficiency of a *Loudermill* hearing. *Fields*, 909 F.2d at 97 (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)) ("[C]ourts must consult the entire panoply of predeprivation and postdeprivation process provided by the state"); *see also Crocker*, 859 F.2d at 17. ("[W]e consider *Loudermill's* premise that the decision in that case rested in part on the provisions in state law for a full post-termination hearing").

The procedure VCU used before terminating Walsh more than satisfied due process requirements. VCU first issued Walsh a "due process notice with intent to terminate" for each

offense forming the basis of his termination. (Dk. No. 6-1 at 49.)  After issuing the due process notices, VCU gave Walsh a week "to provide additional information that would mitigate" their findings. (*Id.*)  Walsh took the opportunity to respond to the charges against him and submitted written responses to VCU's allegations. (Dk. No. 6-1 at 27.)  Walsh had both notice of the charges against him as well as an opportunity to respond fully before his termination.  After his termination, Walsh also had access to extensive grievance procedures provided under Virginia law.[6]  Walsh received the process required by the Due Process Clause.  Accordingly, the Court DISMISSES Counts 5-7.

The Court also dismisses Walsh's remaining due process claims, Counts 8-10.  Walsh alleges that VCU deprived him of "his liberty to pursue his teaching passion and vocational aspirations by effectively terminating from his Adjunct Assistant Professor position at VCU." (Dk. No. 6 at ¶¶ 190, 198, 206.)  A liberty interest claim arises from "two distinct rights protected by the Fourteenth Amendment." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007).  First, the Fourteenth Amendment protects "the liberty to engage in any of the common occupations of life." *Id.* (quoting *Roth*, 408 U.S. at 572) (internal quotations omitted).  Second, it protects "the right to due process '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him[.]'" *Id.* (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).  In order to invoke the protections of the Due Process Clause, however, the plaintiff must couple his liberty interest in his reputation with "some more tangible interest[] such as employment." *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)) (internal quotations omitted).

---

[6] *See supra* discussion of the post-termination process p. 4.

In the context of public employment, an employee possesses a liberty interest in their "freedom to take advantage of *other* employment opportunities." *Sciolino*, 480 F.3d at 645 (quoting *Roth*, 408 U.S. at 573) (internal quotations omitted) (emphasis added).  A public employer deprives an employee of a cognizable liberty interest by making statements in conjunction with the employee's termination that seriously harm the employee's reputation in the broader community. *Roth*, 408 U.S. at 573.  A deprivation, however, does not occur simply because the employee "is not rehired in one job but remains as free as before to seek another." *Id.* at 574; *see also Sciolino*, 480 F.3d at 646 n.2 (holding that to prove a valid liberty interest claim, an employee must show that the employer, in the course of terminating the employee, made statements "imply[ing] the existence of serious character defects such as dishonesty or immorality").

Walsh does not claim that his termination from VCU harmed his ability to find other employment.  Instead, he claims an alleged liberty interest in continuing to teach at VCU as an adjunct professor.  The liberty interest recognized in *Sciolino*, though, only relates to the employee's freedom to obtain *other* employment opportunities. *Sciolino*, 480 F.3d at 645. Walsh does not have a liberty interest in remaining at VCU.  Since he cannot show that VCU deprived him of a valid liberty interest, the Court DISMISSES Counts 8-10.

### 3. Count 25: Equal Protection Violation Pursuant to the Fourteenth Amendment

Count 25 alleges that three of the defendants denied Walsh equal protection under the law.  Walsh bases his claim on the facts that "Cain and Plaintiff were both workers at VCU and of opposite genders, yet Cain was given access to file her sexual harassment complaint against Plaintiff, but Plaintiff was denied the right of access by Defendants Logothetis, Williams, and Warren to file his complaint against Cain." (Compl. at 87.)  Walsh further clarifies that "[t]he

issue at hand is not the actual or alleged sexual harassment, the issue at hand is the denial of access to the process to an older (over 40) gendered (male) as opposed to a younger (under 40) gendered (female)." (*Id.*)

Walsh does not contend that VCU's sexual harassment policy treats employees and students unequally based on gender or age; he contends that VCU specifically treated him differently. Based on these alleged facts, the Court finds that the class of one theory is the only conceivable equal protection theory under which Walsh could proceed. "When proceeding under a class of one theory, a plaintiff must allege 'that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Nofsinger v. Va. Commonwealth Univ.*, No. 3:12–CV–236, 2012 WL 2878608, at *10 (E.D. Va. July 13, 2012) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The Court, however, must dismiss Count 25 because based on the facts pled in the complaint, a rational basis for the difference in treatment between Walsh and Cain exists.

Cain allegedly filed her complaint of sexual harassment against Walsh on March 28, 2011. (Compl. ¶ 32.) Walsh asserts two separate instances where he filed a sexual harassment complaint. The first instance occurred on April 4, 2011, during a conversation between Walsh and Williams regarding Cain's complaint against Walsh. During this conversation, Walsh told Williams that he wanted to file a complaint against Cain for sexually harassing him. (Compl. ¶ 68.) The second instance occurred on September 19, 2011, when Walsh filed a "formal sexual harassment retaliation complaint against Logothetis."[7] (Compl. ¶ 300.)

---

[7] VCU defines sexual harassment as "unwelcome acts of a sexual nature including sexual advances, requests for sexual favors and/or other verbal or physical conduct, including written communications, of an intimidating, hostile or offensive nature, or action taken in retaliation for the reporting of such behavior." Office of Equal Employment Opportunity/Affirmative Action Services, *University Guidelines on Prohibition of Sexual Harassment*, Virginia Commonwealth

The Court dismisses the first portion of Count 25—the part based on Walsh's April complaint—because VCU had a rational basis for treating Walsh's complaint differently from Cain's.  VCU's sexual harassment policy restricts retaliation against an employee who reports sexual harassment.  *See* VCU Sexual Harassment Guidelines.  A supervisor filing a competing sexual harassment claim less than one week after the employee filed a complaint against him certainly appears to be retaliatory.  Further, VCU's procedure for resolving complaints involves fact-finding by the Office of Equal Employment Opportunity/Affirmative Action Services.  *Id.* This procedure allows the accused to meet with the investigator and tell his or her side of the story.  VCU had a rational basis for treating Walsh's April complaint differently than Cain's complaint.

The Court also dismisses the second portion of Count 25—the part based on Walsh's September complaint—because Walsh's filing a complaint against Logothetis for sexual harassment retaliation does not fall within policy's definition of sexual harassment.  Walsh does not contend that Logothetis sexually harassed him or that Logothetis retaliated against Walsh for *Walsh* reporting sexual harassment.  Walsh contends that Logothetis retaliated against him for *Cain* reporting sexual harassment by Walsh.  The September sexual harassment complaint, therefore, does not fall within the permissible realm of sexual harassment violations.  Thus, VCU had a rational basis for treating Cain's sexual harassment complaint differently than Walsh's September sexual harassment complaint.  Accordingly, the Court must dismiss Walsh's equal protection claim for failure to state a claim.

*B. Alleged Federal Statutory Violations*

---

University, http://www.assurance.vcu.edu/Policy%20Library/University%20Guidelines%20on%20Prohibition%20of%20Sexual%20Harassment.pdf [hereinafter VCU Sexual Harassment Guidelines].

*1. Count 4: Theft of Intellectual Property under 18 U.S.C. §§ 1029–30*

In Count 4, Walsh alleges "Theft of Intellectual Property under the Computer Fraud and Abuse Act (CFAA), 18 USC § 1029 and 18 USC § 1030." (Compl. at 67.) As an initial matter, Title 18 of the U.S. Code relates to Crimes and Criminal Procedure. "The Supreme Court historically has been loath to infer a private right of action from 'a bare criminal statute' because criminal statutes are usually couched in terms that afford protection to the general public instead of a discrete, well-defined group." *Doe v. Broderick*, 225 F.3d 440, 448 (4th Cir. 2000) (quoting *Cort v. Ash*, 422 U.S. 66, 80 (1975)). In fact, "the Computer Fraud Abuse Act of 1986, Pub. L. No. 99-474, 100 Stat. 1213 . . . remains primarily a criminal statute designed to combat hacking." *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 200 (4th Cir. 2012).

Walsh first refers to 18 U.S.C. § 1029 (*See* Compl. ¶¶ 157–67.), dealing with fraud and related activity in connection with access devices. 18 U.S.C. § 1029. Section 1029(e)(1) defines an access device as "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device[.]" The Court finds no facts in Walsh's complaint regarding an "access device" because Walsh's complaint only discusses Walsh's computer. Thus, the Court must dismiss this claim because no facts in the complaint support Walsh's legal conclusion that VCU violated the statute.

Walsh also refers to 18 U.S.C. § 1030 in Count 4 and quotes the language from the statute upon which he relies. Section 1030 primarily makes computer hacking a crime. While § 1030 does permit a private party to bring a civil action to obtain relief, 18 U.S.C. § 1030(g), Walsh glosses over a vital requirement. (Compl. ¶ 160.) Section 1030(g) states that "[a] civil

action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I) through (V) of subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). The referenced subclauses state:

> (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (III) physical injury to any person;
> (IV) a threat to public health or safety;
> (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security;

18 U.S.C. § 1030(c)(4)(A)(i)(I)–(V). Walsh does not allege any facts supporting his claim that VCU's conduct involved one of the five necessary factors. *WEC Carolina*, 687 F.3d at 200. Accordingly, the Court dismisses Count 4.[8]

   *2. Counts 11–12: Conspiracy to Violate Due Process under 18 U.S.C. §§ 241–42*

Walsh alleges "Fifth and Fourteenth Amendments Violation of Plaintiff's Due Process of Law (U.S. Const. Amend. V and XIV) with Conspiracy and Retaliation . . . under 18 USC § 242 . . . [and] 18 USC § 241." (Compl. at 74–76.) Count 11 alleges deprivation of his property right

---

[8] Even if Walsh had alleged one of the necessary factors, such as at least $5,000 in damages (the only potentially applicable factor), the Court must still dismiss Count 4. Walsh relies on the subsection of § 1030 which maintains a cause of action against "[w]hoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). The term "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). As previously discussed, *see supra* Section III(A)(1), VCU had the right to monitor Walsh's computer. Thus, VCU did not "exceed authorized access" as required to sustain a violation under § 1030.

in continued employment at VCU, (Compl. ¶ 213), while Count 12 alleges deprivation of Walsh's "liberty to pursue his teaching passion and vocational aspirations,[9] (Compl. ¶ 218)."

18 U.S.C. § 241 deals with conspiracy against civil rights. 18 U.S.C. § 241. This statute, however, does not establish a private cause of action. *Iglesias v. Wal-Mart Stores East, L.P.*, No. 2:09CV8, 2009 WL 8760729, at *3 (E.D. Va. Oct. 26, 2009). "Plaintiff thus may not personally institute criminal proceedings or seek civil redress under 18 U.S.C. § 241. *Id.* (citing *Roberts v. Pepersack*, 256 F. Supp. 415 (D. Md. 1966)). Similarly, the Court cannot infer a private cause of action from 18 U.S.C. § 242, dealing with deprivation of rights under color of law. *Smith v. Commonwealth of Va.*, No. 3:08CV800, 2009 WL 2175759, at *5 (E.D. Va. July 16, 2009) (citing *Doe v. Broderick*, 225 F.3d 440, 448 (4th Cir. 2000)). Accordingly, the Court must dismiss Counts 11–12 because Walsh lacks standing to bring an action under 18 U.S.C. §§ 241–42.

*3. Counts 13–14: Violation of Fair Labor Standards Act under 29 U.S.C. § 201 et seq.*

In Counts 13–14, Walsh alleges violations of the Fair Labor Standards Act ("FLSA"). Walsh does not cite a specific section of the statute, but generally states that "29 USC § 201 et seq., requires employers to pay workers for all hours worked as non-exempt employees." (Compl. ¶¶ 223, 239.) Count 13 alleges that VCU refuses to pay Walsh's earned overtime. Count 14 "lies against Defendant Sebring for her deceitful and fraudulent scheme in falsifying state records and re-classifying Plaintiff from FLSA Non-Exempt status to Exempt status with no authority to do same [sic]. Logothetis was Plaintiff's direct supervisor and needed to approve such a change in paperwork." (Compl. ¶ 232.)

---

[9] Even if Walsh could somehow bring a civil action for criminal conspiracy in Count 12, the law does not recognize the "liberty to pursue [] teaching passion and vocational aspirations" as a protected property interest. *See supra* Section III(A)(2).

The FLSA sets out exceptions to the statute's minimum wage and maximum hour requirements for certain types of employees. 29 U.S.C. § 213. One exemption is for "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The term "employee employed in a bona fide executive capacity" in section 13(a)(1) means any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100. The term "employee employed in a bona fide administrative capacity" means any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. This term also includes employees in administrative functions in or directly related to an educational establishment. *See* 29 C.F.R. § 541.204.

The facts in Walsh's complaint prove that Walsh qualified as an exempt employee because of both his executive and administrative functions. Walsh easily met the salary

minimum with a starting salary at VCU of $84,000. (Compl. ¶ 98.) As Chief Administrative

Officer of the Department, Walsh had responsibility for "administrative supervision and fiscal

oversight of all fund sources for the department . . . [and] oversee[ing] administration of

personnel and other general administrative matters in the Department, including all educational

departmental programs." (Dk. No. 6-5 at 105.) Additionally, in his role, Walsh had three

employees directly reporting to him. (Compl. ¶ 46.) Accordingly, the Court finds Walsh exempt

from minimum wage and maximum hour requirements under the FLSA. As such, Walsh is not

entitled to overtime pay from VCU, nor can he complain that one of his supervisors

appropriately classified him as an exempt employee. Thus, the Court dismisses Counts 13–14

for failure to state a claim upon which the Court can grant relief.

### C. Alleged State Statutory Violations

#### 1. Counts 11–12: Conspiracy to Violate Due Process under Va. Code § 18.2-499

In addition to Walsh's claim of conspiracy to violate due process under federal law, *see*

*supra* Section III(B)(ii), Walsh also alleges conspiracy under Va. Code § 18.2-499[10] in Counts

11–12. This criminal statute provides for civil relief in addition to criminal sanctions. *Id.*

As a preliminary matter, the intracorporate conspiracy doctrine precludes this claim. "It

is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy.

A corporation cannot conspire with itself any more than a private individual can, and it is the

general rule that the acts of the agent are the acts of the corporation" *Buschi v. Kirven*, 775 F.2d

1240, 1251 (4th Cir. 1985) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911,

914 (5th Cir. 1952)). This doctrine provides immunity to the corporation from a claim of

---

[10] Section 18.2-499 is titled "Combinations to injure others in their reputation, trade, business or profession" and "rights of employees." Va. Code § 18.2-499.

conspiracy, and the "immunity granted under the doctrine to the agents and the corporation [is not] destroyed because the agents are sued individually." *Id.* at 1252.

All of the defendants except for Greer Saunders worked for VCU and the Commonwealth of Virginia at the time of the events leading to Walsh's complaint. Greer Saunders worked for the Commonwealth as an Assistant Attorney General and, by Walsh's own admission, "took over the legal control of the termination process of Plantiff *on behalf* of VCU and all of its actors sometime in early 2012." (Compl. ¶ 95(c) (emphasis added)). The fact that Walsh sued each defendant individually does not destroy the immunity granted under the doctrine. *See Buschi*, 775 F.2d at 1252. Accordingly, all defendants qualify as agents of VCU and, more broadly, of the Commonwealth, and, therefore, the intracorporate conspiracy doctrine protects them.

Turning to the merits of Counts 11 and 12, they fail because employment interests are not protected under the statute. Virginia Code § 18.2-499 protects people in their businesses, not in their employment. *Andrews v. Ring*, 266 Va. 311 (2003); *Jordan v. Hudson*, 690 F. Supp. 502 (E.D. Va. 1988). Here, Walsh claims that he lost his job as an alleged result of the conspiracy. The statute does not protect his interest in employment.

For these reasons, the Court dismisses Walsh's claims of conspiracies under Virginia law.

### 2. Count 13–14: Violation of Va. Code § 40.1-29

In addition to Walsh's allegations of violations of the FLSA in Counts 13–14, *see supra* Section III(B)(iii), Walsh also alleges violation of Va. Code § 40.1-29. As part of the Virginia Wage Payment Act, § 40.1-29 deals with "[t]ime and medium of payment[,] withholding wages[,] written statement of earnings[,] agreement for forfeiture of wages[,] proceedings to enforce compliance[, and] penalties." Va. Code § 40.1-29. The Virginia Wage Payment Act, however, does not provide a private cause of action. *Pallone v. Marshall Legacy Inst.*, 97 F.

Supp. 2d 742, 745 (E.D. Va. 2000) ("[I]t is well settled in Virginia law that where a statute simultaneously creates a right, and provides a means for enforcement of that right, the statutory remedy is the sole remedy available in the absence of other statutory language to the contrary. . . . This principle, applied here, compels the conclusion that the Act does not provide a private right of action."). Accordingly, the Court dismisses Walsh's state law claims in Counts 13–14.

### 3. Counts 15–17: Breach of Oral Contract under Va. Code § 8.01-246(4)

Walsh alleges breaches of oral contracts made by Logothetis in Counts 15–17. According to Walsh, the contracts breached include (1) a contract for Chief Administrative Officer salary, (2) a contract for Adjunct Assistant Professor position with current pay and promised future position with increased pay, and (3) a contract for payment of extra hours worked from April 2008 through March 2011. (Compl. at 79–80.) Walsh refers to Va. Code § 8.01-246 which sets the statute of limitations for "any unwritten contract, express or implied," at three years. Va. Code § 8.01-246(4).

Once again, Walsh selectively ignores portions of statutory law that do not help his claims. Virginia Code § 23-50.4 et seq. codifies the General Assembly's establishment of VCU. Section 23-50.10, establishing the rights and powers of the Board of Visitors, states that "[t]he board shall appoint the president . . . and all professors, teachers, staff members and agents, and shall fix their salaries and shall prescribe their duties." Va. Code § 23-50.10. Thus, Logothetis had no power to enter into contracts with Walsh regarding his position, compensation, or any future compensation.[11] Accordingly, Logothetis and the other defendants could not breach a contract that never existed. The Court, therefore, dismisses Counts 15–17.

---

[11] Even if Walsh did not know about the statute outlining the powers of the Board of Visitors, a reasonable person could not assume that a department chair could guarantee annual raises to a state employee. Walsh alleges that Logothetis "promised[d] 4-5% raises each year." (Compl. ¶

#### 4. Count 23: Computer Invasion of Privacy under Va. Code § 18.2-152.5

In Count 23, Walsh alleges "Violation of Virginia Law with Respect to Computer Invasion of Privacy (Va. Code § 18.2-152.2)." (Compl. at 86.) Under § 18.2-152.2, in relevant part, "[a] person is guilty of the crime of computer invasion of privacy when he uses a computer or computer network and intentionally examines without authority any employment, salary, credit or any other financial or identifying information." Va. Code § 18.2-152.2. "While that statute is a criminal statute, Virginia Code section 18.2-152.12 grants civil recourse to a party aggrieved under section 18.2-152.5." *S.R. v. Inova Healthcare Servs.*, 49 Va. Cir. 119 (1999). As previously discussed, *see supra* Section III(A)(i) and note 6, VCU had the right to monitor Walsh's computer.   Thus, VCU did not examine Walsh's computer without authority. Accordingly, the Court dismisses Count 23.

#### 5. Count 24: Violation of 8 VAC 90-10-60

Count 24 hardly merits discussion.   Walsh alleges violation of Title 8 of the Virginia Administrative Code sections 90-10-60(3)–(4). (Compl. at 86.) The General Assembly repealed this section effective March 11, 2013.   Walsh, at least, acknowledges this and "respectfully requests injunctive relief to require the General Assembly of Virginia to revoke its repeal of 8 VAC 90-10-60." (Compl. ¶ 292.) Walsh misconstrues the power of the Court. "The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws, to the executive the duty of executing them, and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts."

---

98.) Nonetheless, Walsh concedes that "[i]n less than a year of working at VCU, Plaintiff missed getting his promised 4-5% raise in his first cycle since the State didn't give any raises out to anyone." (Compl. ¶ 99.)   Accordingly, Walsh had notice within a year of starting at VCU that the Commonwealth made employee compensation decisions, not Logothetis.

24

*Massachusetts v. Mellon*, 262 U.S. 447, 488, (1923). This Court, therefore, dare not delve into the business of dictating to the General Assembly the laws it should pass or repeal.

### D. Alleged State Common Law Violations

#### 1. Counts 18–22: Wrongful Termination

Walsh alleges five counts of "Common Law Wrongful Termination" in Counts 18–22. (Compl. at 81–86.) Counts 19–22 allege wrongful termination because Walsh exposed various illegal practices allegedly committed by VCU. (Compl. ¶¶ 268, 273, 278, 283.) For example, Count 19 "pertains to Plaintiff's wrongful discharge perpetrated by [the] Defendants, for Plaintiff exposing Nepotism and refusing to take part in it, resulting in a wrongful discharge of Plaintiff in violation of public policy." (Compl. ¶ 268.) Count 18 differs slightly from the other wrongful termination claims because it "pertains to Plaintiff's wrongful discharge perpetrated by [the] Defendants resulting in a Conspiracy to wrongfully discharge Plaintiff in violation of Public Policy." (Compl. ¶ 263.) The Court does not completely understand this allegation, but to the extent that Count 18 realleges Walsh's contentions of conspiracy, see *supra* Sections III(B)(2) and III(C)(1), the court dismisses Count 18 for the reasons stated above. To the extent that Count 18 alleges wrongful termination, the Court dismisses this Count, along with Counts 19–22, for the reasons set forth below.

As an initial matter, the record from Walsh's state grievance procedure confirms that VCU terminated Walsh for cause. The report clearly indicates that VCU terminated Walsh for falsifying his employment application, a reason that VCU clearly had the right to use and of which Walsh had notice. (Dk. No. 6-1 at 12–23, *In re* Case No. 9847 (Aug. 2, 2012)). Further, the Department of Human Resource Management, (Dk. No. 6-1 at 43–44), the Office of Employment Dispute Resolution, (Dk. No. 6-1 at 32–42, *In re* Virginia Commonwealth

University, Ruling No. 2013-3415 (Oct. 5, 2012)), the Circuit Court of the City of Richmond, (Dk. No. 6-1 at 3–7, *Walsh v. Virginia Commonwealth University*, No. CL12-4909-5 (Jan. 3, 2013)), and the Court of Appeals of Virginia, (Dk. No. 6-1 at 1, *Walsh v. Virginia Commonwealth University*, Record No. 0261-13-2 (June 25. 2013)), all affirmed this holding. VCU did not wrongly terminate Walsh. Nonetheless, the Court will briefly discuss wrongful termination as a cause of action and how the claim does not apply to Walsh.

Virginia adheres to the doctrine of employment-at-will. *Brown v. Wal-Mart Stores, Inc.*, 52 Va. Cir. 480 (2000). "The doctrine leaves either party free to terminate the employment relationship at any time for any reason or for no reason." *Id.* Limited exceptions, however, apply to this doctrine as set forth in *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985). "A cause of action under *Bowman* can be made only if (1) there is a violation of an employee's statutory right; (2) there is a violation of a clearly expressed policy, and the employee is a member of the class protected by the statute; or (3) an employee is discharged for refusal to engage in a criminal act." *Silverman v. Town of Blackstone, Va.*, 843 F. Supp. 2d 624, 627 n.1 (E.D. Va. 2011) (citing *Rowan v. Tractor Supply Co.*, 263 Va. 209, 213–14, 559 S.E.2d 709, 711 (2002)). As a threshold matter, a plaintiff attempting to assert a "*Bowman* claim" must identify "a Virginia statute that the employer-defendant violated by terminating the plaintiff." *Williams v. Va., State Bd. of Elections*, No. 3:11CV863, 2012 WL 2878579, at *8 (E.D. Va. July 13, 2012) (internal citation omitted).

The Court dismisses Walsh's wrongful termination claims, Counts 18–22, because Walsh fails to meet the threshold requirement of identifying which Virginia statute VCU violated. Walsh simply says "in violation of Public Policy," (*see, e.g.*, Compl. ¶ 263), but does not identify

the policy to which he refers.  The Court need not consider this conclusory statement, nor is the Court required to search for an applicable public policy on behalf of the *pro se* plaintiff.

Furthermore, to the extent that Walsh seeks relief as a "whistleblower" to VCU's alleged wrongful conduct, Virginia does not recognize such a claim as an exception to the employment-at-will doctrine.  *Dray v. New Market Poultry Products, Inc.*, 258 Va. 187, 191, 518 S.E.2d 312, 313 (1999) ("[T]he plaintiff seeks to mount a generalized, common-law "whistleblower" retaliatory discharge claim.  Such a claim has not been recognized as an exception to Virginia's employment-at-will doctrine, and we refuse to recognize it today.").  Thus, the Court dismisses Walsh's wrongful termination claims for failing to state valid claims.

## IV. CONCLUSION

For the reasons set forth above, the Court DISMISSES all counts in Walsh's complaint WITH PREJUDICE.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and via U.S. Mail to the *pro se* plaintiff.

Date: 1/21/14
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge